FILED

2016 Nov-28  PM 03:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| Gloria Crumpton and Lecretia Crumpton, *on behalf of themselves and others similarly situated,* | ) ) ) ) | Case No. |
| Plaintiffs, | ) ) | CLASS ACTION COMPLAINT |
| v. | ) ) | Jury Trial Demanded |
| Lendmark Financial Services, LLC, | ) ) | |
| Defendant. | ) | |

## Nature of this Action

1.     Gloria Crumpton and Lecretia Crumpton ("Plaintiffs") bring this class action against Lendmark Financial Services, LLC ("Defendant") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2.     Upon information and good faith belief, Defendant routinely violates 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system to place non-emergency calls to numbers assigned to a cellular telephone service, without prior express consent.

## Jurisdiction and Venue

3.     This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

4.     Venue is proper before this Court under 28 U.S.C. § 1391(b) as the acts and transactions giving rise to Plaintiffs' action occurred, in part, in this district, and as Defendant transacts business in this district.

## Parties

5.     Gloria Crumpton is natural person who at all relevant times resided in Tuscaloosa, Alabama.

6.     Lecretia Crumpton is natural person who at all relevant times resided in Tuscaloosa, Alabama.

7.     Defendant is a company headquartered in Covington, Georgia.

8.     Defendant "is a consumer finance company specializing in providing a variety of personal loans, automobile loans, and retail merchant sales finance services." https://www.lendmarkfinancial.com/about-us/

9.     Defendant posted an add on LinkedIn that reads, in part:

Lendmark Financial Services is a consumer finance company that specializes in providing direct and indirect personal loans, automobile loans, debt consolidation loans, and merchant retail sales financing services. Lendmark operates over 320 branch locations throughout Georgia, Tennessee, Virginia, Maryland, Florida, North Carolina, South Carolina, Kentucky, West Virginia, Pennsylvania, Alabama, Mississippi, Delaware, Arizona, California, Colorado, Idaho, Ohio, Texas and Washington.

Job Summary

The role of the Collections Supervisor will be responsible for assisting in management of a contact center that works late stage delinquency for branch operations. Responsibilities include assisting in oversight and management of an inbound-outbound auto dialer, reviewing and implementing processes and strategies to ensure the department is functioning at a highly efficient pace while obtaining established goals.

Competencies

*        *        *

- Assist in managing an inbound-outbound auto dialer, including interpretation of related reports (10%)

https://www.linkedin.com/jobs/view/194172871

**Factual Allegations (Gloria Crumpton)**

10.     Sometime in 2016 Defendant began placing calls to Gloria Crumpton's cellular telephone number—(205) 535-XXXX.

11.     For example, Defendant placed at least one call to Gloria Crumpton's cellular telephone number on each of the following dates: October 6, 2016; October 5, 2016; October 4, 2016; September 30, 2016; September 28, 2016; September 26, 2016; September 23, 2016; September 15, 2016; September 13, 2016; September 12, 2016; September 9, 2016; September 7, 2016; September 6, 2016; August 31, 2016; August 26, 2016; August 25, 2016; August 23, 2016; August 20, 2016; and July 28, 2016.

12.     In all, Gloria Crumpton estimates that Defendant placed approximately one hundred calls to her cellular telephone number.

13.     Defendant placed its calls to Gloria Crumpton's cellular telephone number from telephone numbers including: (205) 632-0330; (855) 306-1744; (912) 729-4222; (912) 691-1776; (251) 308-9000; and (205) 454-9200.

14.     On more than one occasion Gloria Crumpton answered a call that Defendant placed to her cellular telephone number, and instructed Defendant to stop placing calls to her cellular telephone number.

15.     On September 9, 2016, Gloria Crumpton mailed a letter to Defendant that states, in part: "I am writing to ask you, your staff and all the other Lendmark locations outside of Tuscaloosa, AL area to please stop calling harassing me. . . . [T]his is my final letter asking you to stop calling me . . . . Again, please stop calling me . . . ."

16.     During a subsequent conversation between Defendant and Gloria Crumpton, Defendant acknowledged receiving her letter, but noted that it would continue to place calls to her cellular telephone number.

17.     In line with its comment, Defendant continued to place calls to Gloria Crumpton's cellular telephone number after she informed it—orally and in writing—to stop doing so.

18.    Gloria Crumpton also estimates that Defendant left approximately seventy voice messages for her on her cellular telephone number.

19.    One voice message Defendant left for Gloria Crumpton states: ". . . your account is important, it matters, or I would not call you every day . . . . I need to speak with you today."

20.    Another voice message Defendant left for Gloria Crumpton states: ". . . you don't have to worry about me calling you anymore . . . . I need to talk to you today, it's very important to me, it's very important to my staff, it's very important to my paycheck, ultimately . . . ."

21.    Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls, Defendant placed its calls to Gloria Crumpton's cellular telephone number by using an automatic telephone dialing system.

22.    Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls, Defendant placed its calls to Gloria Crumpton's cellular telephone number by using equipment which has the capacity (i) to store or produce telephone numbers to be called, using a random or sequential number generator, and (ii) to dial such numbers.

23.    Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls, Defendant placed its calls to Gloria Crumpton's cellular telephone number by using (i) an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a person will be available to take the call, or (ii) equipment that dials numbers and, when certain computer software is attached, also assists persons in predicting when a sales agent will be available to take calls, or (iii) hardware, that when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers, or (iv) hardware, software, or

equipment that the FCC characterizes as a predictive dialer through the following, and any related, reports and orders, and declaratory rulings: *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd 17459, 17474 (September 18, 2002); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14092-93 (July 3, 2003); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566 (Jan. 4, 2008); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 15-72 (adopted June 18, 2015 and released July 10, 2015).

24.     Upon information and good faith belief, Defendant placed its calls to Gloria Crumpton's cellular telephone number for non-emergency purposes.

25.     Upon information and good faith belief, Defendant placed its calls to Gloria Crumpton's cellular telephone number voluntarily.

26.     Upon information and good faith belief, Defendant placed its calls to Gloria Crumpton's cellular telephone number under its own free will.

27.     Upon information and good faith belief, Defendant had knowledge that it was using an automatic telephone dialing system to place its calls to Gloria Crumpton's cellular telephone number.

28.     Upon information and good faith belief, Defendant intended to use an automatic telephone dialing system to place its calls to Gloria Crumpton's cellular telephone number.

29.     Upon information and good faith belief, Defendant maintains business records that show all calls it placed to Gloria Crumpton's cellular telephone number.

30.     Gloria Crumpton suffered actual harm as a result of Defendant's calls in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

31.     As well, Defendant's calls at issue depleted or consumed, directly or indirectly, cellular telephone minutes for which Gloria Crumpton paid a third party.

32.     Moreover, Defendant's calls at issue unnecessarily tied up Gloria Crumpton's cellular telephone line.

33.     Defendant also placed calls to, and left no less than eight voice messages for, Gloria Crumpton's son, Derek Crumpton.

34.      The voice messages that Defendant left for Derek Crumpton state that Defendant is attempting to reach his mother, Gloria Crumpton, that "Gloria Crumpton gave us your name and number as a reference," and that it is "extremely urgent."

### Factual Allegations (Lecertia Crumpton)

35.     Sometime in 2016 Defendant began placing calls to Lecretia Crumpton's cellular telephone number—(205) 499-XXXX.

36.     In all, Lecretia Crumpton estimates that Defendant placed approximately fifty calls to her cellular telephone number.

37.     On at least one occasion Lecretia Crumpton answered a call that Defendant placed to her cellular telephone number—a call that Defendant placed in an effort to contact Gloria Crumpton—and instructed Defendant that it had the wrong number.

38.     On at least one occasion Lecretia Crumpton answered a call that Defendant placed to her cellular telephone number and instructed Defendant to stop placing calls to her cellular telephone number.

39.     Defendant, however, continued to place calls to Lecretia Crumpton's cellular telephone number after she instructed it to stop doing so.

40.     Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls, Defendant placed its calls to Lecretia Crumpton's cellular telephone number by using an automatic telephone dialing system.

41.     Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls, Defendant placed its calls to Lecretia Crumpton's cellular telephone number by using equipment which has the capacity (i) to store or produce telephone numbers to be called, using a random or sequential number generator, and (ii) to dial such numbers.

42.     Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls, Defendant placed its calls to Lecretia Crumpton's cellular telephone number by using (i) an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a person will be available to take the call, or (ii) equipment that dials numbers and, when certain computer software is attached, also assists persons in predicting when a sales agent will be available to take calls, or (iii) hardware, that when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers, or (iv) hardware, software, or equipment that the FCC characterizes as a predictive dialer through the following, and any related, reports and orders, and declaratory rulings: *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd 17459, 17474 (September 18, 2002); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14092-93 (July 3, 2003); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566 (Jan. 4,

2008); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 15-72 (adopted June 18, 2015 and released July 10, 2015).

43.     Lecretia Crumpton is not, nor was, one of Defendant's customers.

44.     Lecretia Crumpton does not, nor did, have a business relationship with Defendant.

45.     Lecretia Crumpton did not give Defendant prior express consent to place calls to her cellular telephone number by using an automatic telephone dialing system.

46.     Upon information and good faith belief, Defendant placed its calls to Lecretia Crumpton's cellular telephone number for non-emergency purposes.

47.     Upon information and good faith belief, Defendant placed its calls to Lecretia Crumpton's cellular telephone number voluntarily.

48.     Upon information and good faith belief, Defendant placed its calls to Lecretia Crumpton's cellular telephone number under its own free will.

49.     Upon information and good faith belief, Defendant had knowledge that it was using an automatic telephone dialing system to place its calls to Lecretia Crumpton's cellular telephone number.

50.     Upon information and good faith belief, Defendant intended to use an automatic telephone dialing system to place its calls to Lecretia Crumpton's cellular telephone number.

51.     Upon information and good faith belief, Defendant maintains business records that show all calls it placed to Lecretia Crumpton's cellular telephone number.

52.     Lecretia Crumpton suffered actual harm as a result of Defendant's calls in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

53.     As well, Defendant's calls at issue depleted or consumed, directly or indirectly, cellular telephone minutes for which Lecretia Crumpton paid a third party.

54.     Moreover, Defendant's calls at issue unnecessarily tied up Lecretia Crumpton's cellular telephone line.

55.     Upon information and good faith belief, Defendant, as a matter of pattern and practice, uses an automatic telephone dialing system to place calls to telephone numbers assigned to a cellular telephone service.

### Class Allegations

56.     Plaintiffs bring this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes:

> All persons and entities throughout the United States (1) to whom Lendmark Financial Services, LLC, placed, or caused to be placed, calls (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) during the four years preceding the date of this complaint, (5) after the called party requested that Lendmark Financial Services, LLC stop calling his or her telephone number.

> All persons and entities throughout the United States (1) to whom Lendmark Financial Services, LLC, placed, or caused to be placed, calls (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) during the four years preceding the date of this complaint, (5) absent prior express consent—in that the called party did not provide his or her cellular telephone number to Lendmark Financial Services, LLC.

57.     The proposed classes specifically exclude any entity in which Defendant has or had a controlling interest, all officers and agents of Defendant, and all persons related to within the third degree of consanguinity or affection to any of the foregoing individuals.

58.     Upon information and belief, the members of the classes are so numerous that joinder of all of them is impracticable.

59.     The exact number of the members of the classes is unknown to Plaintiffs at this time, and can be ascertained only through appropriate discovery.

60. The members of the classes are ascertainable because the classes are defined by reference to objective criteria.

61. In addition, the classes are ascertainable because, upon information and belief, cellular telephone numbers, names, and addresses of the members of the classes can be identified in business records maintained by Defendant and by third parties.

62. There exists a well-defined community of interest in the questions of law and fact that affect the members of the classes.

63. Plaintiffs' claims are typical of the claims of the members of the classes.

64. As it did for all members of the classes, Defendant used an automatic telephone dialing system to place calls to Plaintiffs' cellular telephone numbers, without prior express consent, and in violation of 47 U.S.C. § 227.

65. Plaintiffs' claims, and the claims of the members of the classes, originate from the same conduct, practice and procedure on the part of Defendant.

66. Plaintiffs' claims are based on the same theory as are the claims of the members of the classes.

67. Plaintiffs suffered the same injuries as each of the members of the classes.

68. Plaintiffs will fairly and adequately protect the interests of the members of the classes.

69. Plaintiffs' interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the classes.

70. Plaintiffs will vigorously pursue the claims of the members of the classes.

71. Plaintiffs have retained counsel experienced and competent in class action litigation.

72.     Plaintiffs' counsel will vigorously pursue this matter.

73.     Plaintiffs' counsel will assert, protect, and otherwise represent the members of the classes.

74.     Questions of law and fact common to the members of the classes predominate over questions that may affect individual class members.

75.     Issues of law and fact common to all members of the classes are:

    a.   Defendant's violations of the TCPA;

    b.   The existence of Defendant's identical conduct;

    c.   Defendant's use of an automatic telephone dialing system as defined by the TCPA; and

    d.   The availability of statutory penalties.

76.     A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

77.     If brought and prosecuted individually, the claims of the members of the classes would require proof of the same material and substantive facts.

78.     The pursuit of separate actions by individual members of the classes would, as a practical matter, be dispositive of the interests of other members of the classes, and could substantially impair or impede their ability to protect their interests.

79.     The pursuit of separate actions by individual members of the classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

80.     These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the classes.

81.     The damages suffered by each individual member of the classes may be relatively small; thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the classes to redress the wrongs done to them.

82.     The pursuit of Plaintiffs' claims, and the claims of the members of the classes, in one forum will achieve efficiency and promote judicial economy.

83.     There will be little difficulty in the management of this action as a class action.

84.     Defendant has acted or refused to act on grounds generally applicable to the members of the classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(b)(1)(A)(iii)**

85.     Plaintiffs repeats and re-alleges each and every factual allegation included in paragraphs 1-84.

86.     Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system to place non-emergency calls to Plaintiffs' cellular telephone numbers, absent prior express consent.

**Trial by Jury**

87.     Plaintiffs are entitled to, and demand, a trial by jury.

WHEREFORE, Plaintiffs prays for relief and judgment, as follows:

   a) Determining that this action is a proper class action;

   b) Designating Plaintiffs as class representatives under Federal Rule of Civil Procedure 23;

c)  Designating Plaintiffs' counsel as class counsel under Federal Rule of Civil Procedure 23;

d)  Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

e)  Enjoining Defendant from continuing its violative behavior;

f)  Awarding Plaintiffs and the members of the classes damages under 47 U.S.C. § 227(b)(3)(B);

g)  Awarding Plaintiffs and the members of the classes treble damages under 47 U.S.C. § 227(b)(3);

h)  Awarding Plaintiffs and the members of the classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i)  Awarding Plaintiffs and the members of the classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j)  Awarding such other and further relief as the Court may deem just and proper.

Date: November 28, 2016          /s/ Gina DeRosier Greenwald
                                 Gina DeRosier Greenwald
                                 Greenwald Davidson Radbil PLLC
                                 5550 Glades Rd, Ste. 500
                                 Boca Raton, FL 33431
                                 Tel: (561) 826-5477
                                 Fax: (561) 961-5684
                                 ggreenwald@gdrlawfirm.com

                                 Aaron D. Radbil*
                                 Greenwald Davidson Radbil PLLC
                                 106 East Sixth Street, Suite 913
                                 Austin, Texas 78701
                                 Phone: (512) 322-3912
                                 Fax: (561) 961-5684
                                 aradbil@gdrlawfirm.com

                                 Counsel for Plaintiff and the proposed class

                                 *to seek admission *pro hac vice*